IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANE LEE CONLEY, )
 )
      Plaintiff, )
 )
  v. ) Civil Action No. 15-261
 )
 )
CAROLYN W. COLVIN, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
 )
      Defendant. )

O R D E R

AND NOW, this 31st day of March, 2016, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a

1

federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (1) improperly assessing certain medical opinions in the record; (2) incorrectly determining Plaintiff's residual functional capacity ("RFC"); (3) disregarding the testimony of the Vocational Expert ("VE") and relying on an incomplete hypothetical question to the VE; (4) improperly evaluating Plaintiff's subjective complaints of pain; and (5) failing to provide Plaintiff with a full and fair hearing because of the ALJ's alleged bias. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

Regarding Plaintiff's first and second arguments, which are intertwined, it is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). In fact, a treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). Thus, a treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Social Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

Accordingly, the Court finds no merit in Plaintiff's contention regarding the ALJ's decision not to give controlling weight to the opinion rendered by treating physician Richard Latuska, M.D., from December 14, 2011. (R. 601-02). The Court finds that the ALJ did not, as Plaintiff alleges, improperly reject the report of Dr. Latuska in formulating Plaintiff's RFC. Instead, the ALJ fulfilled his duty as fact-finder to evaluate Dr. Latuska's opinion, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. §§ 404.1527, 416.927. In fact, the ALJ thoroughly reviewed Plaintiff's medical records, including those related to Dr. Latuska's treatment, and specified that he was giving Dr. Latuska's opinion "little weight," explaining that it "is not explained or supported by objective evidence, and is not consistent with the other evidence of record." (R. 26).

Moreover, the ALJ noted that the opinion of Dr. Latuska is provided on a form for the Pennsylvania Department of Public Welfare. (R. 26). Thus, the opinion at issue here is actually an administrative "Employability Assessment Form" that was simply filled out by the doctor, and consists of options to check and blanks to be filled in by hand. (R. 601-02). The Court of Appeals for the Third Circuit has stated that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Thus, the Court agrees with the ALJ that Dr. Latuska's opinion lacks significant discussion, explanation or details to justify his statements contained therein, and the Court finds that the ALJ sufficiently explained his reasons for declining to give Dr. Latuska's opinion controlling weight.

Plaintiff also contends that the ALJ did not properly weigh the opinion of consultative psychological examiner Martin Meyer, Ph.D., in formulating Plaintiff's RFC. (R. 585-92). The Court notes, however, that the ALJ reviewed Dr. Meyer's report in detail, but ultimately gave "limited weight" to his opinion of slight limitations in Plaintiff's ability to understand, remember, and carry out short, simple instructions; moderate limitations in his ability to understand, remember, and carry out detailed instructions; marked limitations in his ability to interact appropriately with the public; slight limitations in the ability to interact appropriately with supervisors; moderate limitations in his ability to interact appropriately with coworkers; marked limitations in his ability to respond appropriately to work pressures in a usual work setting; and slight limitations in his ability to respond appropriately to changes in a routine work setting. (R. 28-29). While the ALJ did not specifically discuss Plaintiff's one-time GAF score of 50 assigned by Dr. Meyer, GAF scores are no longer included in the DSM-V and are not dispositive of the issue of disability under the regulations, and the Court notes that the ALJ did thoroughly review Dr. Meyer's examination and findings which formed the basis for that GAF score. See Rios v. Comm'r of Soc. Sec., 444 Fed. Appx. 532, 535 (3d Cir. 2011); 65 Fed. Reg. 50746-01, 50764-65 (2000). The ALJ also compared Dr. Meyer's report with records from Plaintiff's visits to his primary care physician, noting that Plaintiff's "treatment records indicate that he has normal mental status and is managed with conservative treatment." (R. 29). The ALJ thus ultimately found that Plaintiff's "subjective complaints reflect a higher degree of impairment than is reflected in observations from his treating sources or his treatment history." (R. 29).

Finally, the ALJ concluded that he was giving "more weight to the opinions of the State agency medical consultants, who opined that [Plaintiff] is able to perform basic work activity despite his impairments." (R. 29, 83-98). The ALJ found that those opinions "are consistent with [Plaintiff's] treatment history, activities of daily living, objective findings, and mental status examinations." (R. 29). Although Plaintiff would prefer that the Court rely on Dr. Meyer's opinion, the Court of Appeals for the Third Circuit has stated that, in making an RFC determination, an ALJ may give more weight to a non-examining professional's opinion if that opinion is better supported by the record. See Salerno v. Comm'r of Soc. Sec., 152 Fed. Appx. 208 (3d Cir. 2005) (affirming an ALJ's decision to credit the opinion of a non-examining state

agency reviewing psychologist, rather than the opinions of a treating physician and a consultative examiner).  As in Salerno, the record here establishes that the ALJ was likewise entitled to give more weight to the state agency examiners' opinions than to that of a consultative examiner.

Plaintiff argues, additionally, that the ALJ did not adequately address the limitations identified by state agency physician Mary Ellen Wyszomierski, M.D.  First, because in his hypothetical question to the VE the ALJ asked whether jobs exist at the light exertional level that the hypothetical individual could perform, Plaintiff's contention that the ALJ's failure to consider Dr. Wyszomierski's limitation of Plaintiff to work at the medium exertional level is irrelevant.  (R. 72-73).  As to the ALJ declining to address the non-exertional limitations listed by Dr. Wyszomierski, the Court notes that, as other courts have agreed, the need to "only occasionally perform postural activities, no climbing ladders, ropes or scaffolds, and need to avoid concentrated exposure to excessive vibration or work hazards does not significantly erode the ability to perform sedentary and light work as most jobs at these exertion levels do not require these activities."  Atkinson v. Barnhart, 2006 WL 1455473, *6 (D. Nev. May 19, 2006); see also Lassor v. Astrue, 2007 WL 2021924, at *4 (D. Maine July 11, 2007) (holding that, where the ALJ did not address non-exertional impairments found by a state agency reviewer, "the determination that a claimant's capacity to perform the full range of sedentary or light work is not significantly diminished by her non-exertional impairments can be made without the introduction of testimony from a vocational expert"); Penaloza-Clemente v. Sec'y of Health & Human Servs., 1993 WL 33329, at **5-6 (1st Cir. Feb. 12, 1993) (noting that where non-exertional limitations would not significantly erode the occupational base, an ALJ may rely exclusively on the Grid and need not utilize a VE).  Therefore, as the limitations of occasionally climbing ladders, ropes and scaffolds, and avoiding concentrated exposure to vibration and hazards do not significantly erode the light work base, the ALJ did not need to introduce testimony to determine that Plaintiff's capacity to perform the full range of light work is not significantly diminished by such impairments.  See Goble v. Comm'r of Soc. Sec., 2012 WL 832356, at *10 (N.D. Ohio Mar. 9, 2012) ("According to SSR 83-14, the limitations on climbing ladders, ropes, poles, and scaffolds do not significantly erode the occupational base of light work."); Maselli v. Astrue, 2008 WL 553615, at *13 (N.D. Fla. Feb. 28, 2008) (citing SSR 85-15, stating that the limitation that a claimant avoid hazards, such as machinery or heights, due to the risk of fainting, has been ruled to be a non-exertional limitation that does not substantially erode the occupational base).

Thus, upon review, the Court finds that the ALJ properly discharged his duty to consider Dr. Latuska's opinion, Dr. Meyer's opinion, and the other relevant evidence presented in the record.  Throughout his decision, the ALJ clearly considered all the evidence, provided discussion of the evidence to support his evaluation, and ultimately concluded that certain opinions of record were not supported by the evidence as a whole.  Therefore, the Court finds that substantial evidence supports the ALJ's evaluation of the opinions presented and his decisions as to the weight he gave to those opinions in making his ultimate determinations regarding Plaintiff's RFC.

Additionally, Plaintiff argues that the Appeals Council erred in failing to remand the case to the ALJ in light of an opinion which Plaintiff submitted to the Council with his appeal, but which he did not present to the ALJ. Specifically, Plaintiff submitted to the Appeals Council a physical capacity evaluation from Josh Click, Doctor of Chiropractic, from October 23, 2013, which was dated five months after the ALJ's decision. (R. 773-76). It is well-established that evidence that was not before the ALJ cannot be considered by a district court in its determination of whether or not the ALJ's decision was supported by substantial evidence, even if it was submitted to the Appeals Council. See Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001); Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 360 (3d Cir. 2011). Accordingly, the Court cannot rely on the additional document to which counsel cites in making such determination here. The Court does, however, have the authority to remand a case on the basis of new evidence under sentence six of 42 U.S.C. § 405(g), which provides, in relevant part:

> [The court] may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Thus, in order to remand a case based on new evidence which has not been presented to the ALJ, the Court must determine that certain criteria have been met. First, the evidence must be "new" and "not merely cumulative of what is already in the record." Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Second, the evidence must be "material," which means that "it must be relevant and probative," and there must be "a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Id. Third, the plaintiff "must demonstrate good cause for not having incorporated the new evidence into the administrative record." Id.

Because the document at issue is from after the date the ALJ issued his decision, the Court will assume that this evaluation is new and not merely cumulative of what is in the record. However, the document substantially post-dates the ALJ's decision, by five months, and there is no indication that the information contained therein relates back to the time period under consideration here. On its face, the document does not appear to opine on anything other than Plaintiff's current status. This evaluation is therefore not material, since it does not relate to the relevant time period in this case. See Szubak, 745 F.2d at 833 ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition."); Rainey v. Astrue, 2012 WL 3779167, at *8 (W.D. Pa. Aug. 31, 2012); Harkins v. Astrue, 2011 WL 778403, at *1 n.1 (W.D. Pa. Mar. 1, 2011).

Moreover, even if the Court were to find the document to be material, Plaintiff has made no real attempt to show good cause for failing to seek to incorporate this document into the

administrative record prior to the time the ALJ made his decision. The only reason why Plaintiff did not submit the evaluation to the ALJ is because, as Plaintiff explains, "this record did not exist at the time of the decision" of the ALJ. (Doc. No. 15, at 22). Nevertheless, at the administrative hearing, Plaintiff requested more time to obtain additional medical records, and the ALJ provided Plaintiff with 20 days to do so. (R. 39-40). There is no indication, however, that Plaintiff attempted to notify the ALJ of the pending evaluation to which this document refers. Furthermore, the ALJ informed Plaintiff's attorney at the hearing that if she ran into a problem obtaining records, she could ask for more time. (R. 40). The ALJ also informed Plaintiff's attorney that if she had difficulty obtaining records, she could ask him for assistance in compelling them and he would gladly help her. (R. 40). However, Plaintiff neither provided the document at issue within the time period allowed, nor did Plaintiff's attorney request additional time in which to do so. Instead, five months later, after the ALJ had reached his decision, Plaintiff provided the document to the Appeals Council. Therefore, even if the Court were to assume that this document is material, because Plaintiff has not shown good cause for failing to incorporate this document into the record before the ALJ, a new evidence remand is not warranted.

Third, the Court finds no merit in Plaintiff's argument that—because the ALJ allegedly failed to include all the limitations supported by the record in his RFC—the hypothetical question to the VE was incomplete. In fact, the hypothetical question to the VE must accurately portray the claimant's impairments, but such question need only reflect those impairments that are adequately supported by the record. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In this case, the Court finds that the ALJ's hypothetical question to the VE fully accommodated the limitations that were supported by the record, which were also properly included in the RFC. (R. 72-73).

As discussed at length, supra and infra, the ALJ accounted for the limitations that were supported by the record when he asked the VE to assume an individual of Plaintiff's education, training and work experience who can work at the light exertional level, but would be limited to simple, routine, and repetitive tasks that are not fast paced; such individual would only make simple work decisions; such individual would be limited to incidental collaboration with coworkers and the public and would collaborate with the supervisor 30 minutes a day; and such individual would need three unscheduled bathroom breaks of three minutes each time during a typical workday. (R. 72-73). Considering these limitations, the VE testified that such an individual could perform jobs that exist in significant numbers in the national economy, including linen folder, remnant sorter and cleaner. (R. 73). Thus, the Court finds that the ALJ relied upon the response to an appropriate hypothetical question which included those limitations, properly portrayed in the RFC, that were supported by the record.

Plaintiff's fourth argument is, in essence, that the ALJ erred in evaluating his credibility because he did not properly consider Plaintiff's subjective complaints of pain and his need to use the bathroom. In support of this claim, Plaintiff contends that the ALJ relied on factual errors

and that he misinterpreted the evidence of record. The Court finds, however, that the ALJ did properly address the evidence presented in finding Plaintiff's statements regarding his limitations to be not entirely credible, and that the ALJ did not mischaracterize the evidence of record in so doing.

In determining whether a claimant is disabled, the ALJ must consider all of a claimant's symptoms, including allegations of pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. §§ 404.1529(a), 416.929(a). A claimant's subjective complaints of pain and other symptoms alone are not sufficient to establish disability. See id. In evaluating a claimant's subjective complaints, the ALJ must consider, first, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms he alleges. See 20 C.F.R. §§ 404.1529(b), 416.929(b). Once an impairment is found, the ALJ then must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit his ability to work. See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii) (factors relevant to symptoms can include daily activities, medications and medical treatment).

In his decision, the ALJ discussed at significant length Plaintiff's medical records and Plaintiff's own statements regarding his alleged impairments. The ALJ found that Plaintiff has a number of severe impairments, including Crohn's disease, irritable bowel syndrome, anxiety, attention deficit hyperactivity disorder, and obsessive compulsive disorder. (R. 21). However, upon review of all the evidence, the ALJ ultimately found that the evidence as a whole simply does not support the extreme limitations Plaintiff alleges.

For example, the ALJ explained that Plaintiff claims that he goes to the bathroom six or seven times per eight-hour work shift, and is sometimes in the bathroom for an hour or more. (R. 24). The ALJ also noted that, at one point in his testimony at the administrative hearing, Plaintiff claimed to spend more time in the bathroom than there were hours in his eight hour shift, which led the ALJ to question whether Plaintiff is exaggerating his symptoms. (R. 24). The ALJ further noted that Plaintiff says that he has severe pain in his lower abdomen, and has to lie down at least three or four time a week for two hours at a time. (R. 24). He also says he makes frequent trips to the emergency room, leaves work early at least five times per month, and calls off work three or more times per month. (R. 24). Plaintiff also claimed that he has had severe flare-ups twice a month for the previous two years, during which he goes to the bathroom up to 20 times per day. (R. 24). The ALJ noted, however, that Plaintiff's complaints are not entirely credible since, although he has frequently visited the hospital with complaints of abdominal pain, "the objective findings are fairly minimal, his allegations of frequency of diarrhea are not substantiated by the treatment records, and there are some indications that he may be reporting pain in an effort to obtain pain medication." (R. 24). Further, the ALJ stated that Plaintiff has been able to maintain part-time employment. (R. 24).

7

In reaching this conclusion, the ALJ provided an extensive review of Plaintiff's medical treatment. (R. 24-27). Without repeating the ALJ's entire summary, but in order to emphasize that the ALJ conducted a thorough analysis of the evidence, the Court notes that the ALJ focused on the following facts. Plaintiff underwent a colonoscopy for abdominal pain in March, 2010, and the postoperative diagnosis was questionable colitis. (R. 24). He reported abdominal pain, nausea, vomiting and diarrhea after eating for one week in September, 2010, but attributed his symptoms to a spider bite or needing to have his gallbladder removed. (R. 24-25). X-rays and a CT scan showed nonobstructive bowel gas pattern and a moderate amount of stool, but no acute abdominal or pelvic abnormalities. (R. 25). Plaintiff underwent a laporoscopic cholecystectomy in October, 2010, after again complaining of abdominal pain. (R. 25).

In January and February, 2011, Plaintiff complained several times of various symptoms, and a CT of the pelvis showed questionable subtle, mild thickening of the colon, with the possibility of very mild or low grade colitis not excluded. (R. 25). In March, 2011, Plaintiff presented to the emergency room, and the nurse's notes from that visit indicate that he frequently came to the emergency room complaining of abdominal pain and that he always requested morphine. (R. 25). He rated his pain as 10/10, but did not appear to be in distress, and the doctor there informed him that they would not be giving him more narcotic medication. (R. 25). He went to his treating physician a few days later, explained his symptoms, had normal bowel sounds and no abdominal bruits, and his doctor listed differential diagnoses of Crohn's disease, irritable bowel syndrome, celiac sprue and ulcerative colitis. (R. 25). Plaintiff underwent a colonoscopy and upper endoscopy, which was limited due to poor preparation, but which showed retained stool and barium, and normal mucosa. (R. 25). A CT scan showed no findings of acute inflammation, fluid collection or bowel obstruction. (R. 25). He was presumptively diagnosed with Crohn's disease based on a small bowel study that was markedly abnormal with an abnormal nodular mucosal pattern in the terminal ileum. (R. 25).

In July 2011, Plaintiff reported doing fairly well since starting treatment for Crohn's disease. (R. 26). In September, 2011, he again presented to the emergency room with complaints of pain different than that from his Crohn's disease, he received medication and was, within a few hours, ambulating with no complaints. (R. 26). In October, 2011, Plaintiff again presented to the hospital complaining of abdominal pain, but a CT of the abdomen and pelvis was essentially negative. (R. 26). Notes indicate that the staff saw Plaintiff engage in histrionics when they approached him, but that he was in no visible distress when resting on a cart. (R. 26). At a doctor visit in December, 2011, Plaintiff complained of feeling nauseous but denied vomiting or diarrhea. (R. 26). In January, 2012, he presented again to the emergency room with abdominal cramping and pain for one hour, but denied vomiting or diarrhea. (R. 26-27). Upon examination, he had no tenderness and showed no signs of pain or discomfort. (R. 27). Plaintiff had a colon polyp removed later that month, and, in February, March and May, 2012, he had additional appointments, but did not complain of diarrhea. (R. 27). In May, 2012, he arrived at the emergency room with a Crohn's attack, complained of

nausea and abdominal cramping, but denied vomiting. (R. 27). He was given Percocet and Prednisone, and was discharged home in stable condition. (R. 27). In July, 2012, Plaintiff's primary care physician noted that he repeatedly failed to follow through with gastrointestinal specialist referrals. (R. 27). He reported nausea, but denied vomiting, no complaint of diarrhea was documented, and examination findings continued to be fairly normal. (R. 27). Between November, 2012 and January, 2013, Plaintiff gained weight, and reported one flare-up in January, 2013, for which he received steroids and pain medication. (R. 27).

In sum, after thorough consideration of the evidence, the ALJ ultimately found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for the reasons he provides in his decision. (R. 24). As described supra, the ALJ reviewed the complaints in accordance with the regulations and provided sufficient explanation as to why he found Plaintiff's allegations to be not entirely credible. The Court, therefore, finds that the ALJ did not err in evaluating Plaintiff's credibility regarding his subjective complaints of pain and frequent use of the bathroom.

Lastly, Plaintiff argues that he did not receive a full and fair hearing because of bias on the part of the ALJ. More specifically, Plaintiff contends that the ALJ's rude and impatient conduct led to the ALJ placing limitations on Plaintiff's attorney regarding her questioning and administrative hearing time. Plaintiff further alleges that this resulted in the ALJ failing to develop the record fully and fairly because his attorney could not bring out all the facts and testimony that she wished to present.

The regulations provide that "'[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.'" Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (quoting 20 C.F.R. §§ 404.940, 416.1440 (1994)). Additionally, the plaintiff "must bring any objections to the attention of the ALJ, and the ALJ shall decide whether to continue the hearing or withdraw." Id. Moreover, if the ALJ does not withdraw, the plaintiff "may present objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another ALJ." Id. Thus, the procedures provide that Plaintiff's representative here should have, at the administrative hearing, "alleged that the ALJ was prejudiced and requested that he disqualify himself." Id. That did not occur, however, nor apparently did Plaintiff present his bias argument to the Appeals Council. While Plaintiff could be deemed to have waived a bias claim by failing to raise it in the manner specified in the regulations, the Court finds, regardless, that no valid bias claim exists here. See Hummel v. Heckler, 736 F.2d 91, 94 (3d Cir. 1984); see also Ventura, 55 F.3d at 902 (noting that, by raising the bias issue at the administrative hearing, the plaintiff in that case abided by the procedures set forth in the regulations regarding disqualification of ALJs).

In this case, Plaintiff alleges that the ALJ's conduct included rude and impatient comments and that he intended to intimidate Plaintiff's attorney so that she could not bring out all the facts and testimony that she would have liked to have presented. Upon review of the transcript, however, the Court notes that, while the ALJ warned Plaintiff's attorney about asking duplicative questions and indicated to her that she would have a certain period of time that day to present her case, the ALJ also permitted Plaintiff's attorney to present the testimony of two witnesses in addition to that of Plaintiff and the VE. Also, the ALJ allowed 50 minutes of testimony, but explained to Plaintiff's attorney that he would schedule a supplemental hearing if she wished to present additional witnesses and/or testimony. Moreover, as noted, supra, the ALJ provided additional time for Plaintiff to submit additional records after the hearing ended, he let her know that she could have more time to submit records if she needed it, and he said that he would be glad to help her obtain additional records if anyone was uncooperative in providing them.

Rather than displaying anything remotely akin to "deep-seated favoritism or antagonism that would make fair judgment impossible" regarding Plaintiff's case, the Court finds that the ALJ's comments to Plaintiff's attorney were administrative in nature, related to running the hearing, and do not indicate bias on his part. Liteky v. United States, 510 U.S. 540, 554 (1994). As the Third Circuit explains, "[t]he right to an unbiased ALJ is particularly important because of the active role played by ALJs in social security cases" in which they "have a duty to develop a full and fair record." Ventura v. Shalala, 55 F.3d at 902. Thus, in fulfilling that duty, "an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits," and the Court finds here that the comments addressed to Plaintiff's attorney simply do not demonstrate bias on the part of the ALJ. Id.; see also Valenti v. Comm'r of Soc. Sec., 373 Fed. Appx. 255, 258 (3d Cir. 2010) (finding that the plaintiff had not identified any evidence indicating bias or misconduct by the ALJ, unlike in Ventura, where the ALJ "had engaged in coercive, intimidating, and irrelevant questioning of the claimant and had improperly interfered with the claimant's attempt to introduce evidence establishing disability"). Thus, the Court finds that Plaintiff has not shown bias on the part of the ALJ, nor that he in any way prevented Plaintiff's attorney from fully developing the record in this case.

In sum, the ALJ addressed all relevant evidence in the record, including full consideration of the opinion evidence, and he thoroughly discussed the basis for his RFC finding. After careful review of the record, the Court finds that there is substantial evidence to support the ALJ's reasons for not giving controlling weight to various opinions in the record, as well as his decision to give greater weight to other opinion evidence in reaching his final determination. Additionally, the Court finds that the ALJ did not err in assessing Plaintiff's credibility, nor did he err in posing his hypothetical question to the VE. Finally, Plaintiff has not shown the existence of bias on the part of the ALJ. Accordingly, the Court affirms.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 13) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record